IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHARON E. VIRAMONTES,

    Plaintiff,                    No. 2:09-cv-00248 WBS KJN

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.               FINDINGS AND RECOMMENDATION
_____/

        Plaintiff, who is proceeding without counsel, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying, in part, plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act ("Act").[1] In her motion for summary judgment, plaintiff principally contends that the Administrative Law Judge ("ALJ") in this case erred by finding that plaintiff's disability ceased as of August 24, 2004. (Dkt. No. 21.) The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment. (Dkt. No. 22.) Plaintiff filed a reply brief. (Dkt. No. 24.) For the reasons stated below, the court will recommend that this matter be remanded for further

---

[1] This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and was reassigned to the undersigned by an order entered February 9, 2010. (Dkt. No. 26.)

1

proceedings.

## I. BACKGROUND

Plaintiff was born in 1964, has at least a high school level education, and previously worked as a food server.[2] (Administrative Transcript ("AT") 20.) On June 22, 2004, plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging a disability onset date of April 17, 2004. (See AT 40, 74.) Plaintiff alleged that she had impairments including bilateral carpal tunnel syndrome, an autoimmune disease, "lympho-leukopenia," drug-induced lupus, and arthritis throughout her body. (See AT 43.) Plaintiff had also had a severe reaction to a medication for pain called Celebrex, which was the cause of her autoimmune disease, and from which she has recovered.

The Social Security Administration denied plaintiff's application initially and upon reconsideration. (AT 40-41.) Plaintiff filed a request for a hearing, and the ALJ held two hearings regarding plaintiff's claims. (AT 29, 58, 60, 65, 697-722.)

In a decision dated July 28, 2006, the ALJ issued a decision that was partially favorable to plaintiff, concluding that plaintiff was disabled from April 17, 2002, through August 23, 2004. (AT 29-35.) However, the ALJ found that plaintiff's disability had ceased as of August 24, 2004. (AT 35.) Plaintiff requested review by the Appeals Council, which affirmed the ALJ's finding that plaintiff's disability persisted from April 17, 2002, through at least August 23, 2004, but remanded the matter to the ALJ for further consideration of the date that plaintiff's disability ceased. (AT 43-45.)

On remand, the ALJ conducted another hearing at which plaintiff and a vocational expert testified. (AT 670-96.) The ALJ subsequently issued a decision that again found that plaintiff's disability ceased on August 24, 2004. (AT 14-21.) The ALJ's decision became the

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant the issues presented by the parties' respective motions.

2

final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. (AT 6.)

## II.   ISSUE PRESENTED

Whether substantial evidence in the record supports the ALJ's determination that plaintiff's disability ceased on August 24, 2004.

## III.   LEGAL STANDARDS

Where the issue of continued disability or medical improvement is concerned, "a presumption of continuing disability arises" in the claimant's favor once that claimant has been found to be disabled. Bellamy v. Sec'y of Health & Human Servs., 755 F.2d 1380, 1381 (9th Cir. 1985) (citing Murray v. Heckler, 722 F.2d 499, 500 (9th Cir. 1983)). The Commissioner has the "burden of producing evidence sufficient to rebut [the] presumption of continuing disability." Id.; see also Murray, 722 F.2d at 500 ("The Secretary . . . has the burden to come forward with evidence of improvement."). However, a reviewing court will not set aside a decision to terminate benefits unless the determination is based on legal error or is not supported by substantial evidence in the record as a whole.[3]  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984); accord Bellamy, 755 F.2d at 1381; Murray, 722 F.2d at 500.

Relevant here, a claimant's benefits may be terminated where the Commissioner produces substantial evidence that: "(A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and (B) the individual is now able to engage in

---

[3] "'Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); accord Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." Bray, 554 F.3d at 1222 (citing Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007)); see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.") (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

substantial gainful activity." 42 U.S.C. § 423(f)(1).  The applicable regulation defines "medical improvement" as follows:

> Medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled.  A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s). . . .

20 C.F.R. § 404.1594(b)(1).

The Commissioner evaluates whether a claimant continues to be entitled to DIB under an eight-part analytical framework, which consists of the following steps:

> (1) Are you engaging in substantial gainful activity? If you are (and any applicable trial work period has been completed), we will find disability to have ended (see paragraph (d)(5) of this section).
>
> (2) If you are not, do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of this subpart? If you do, your disability will be found to continue.
>
> (3) If you do not, has there been medical improvement as defined in paragraph (b)(1) of this section? If there has been medical improvement as shown by a decrease in medical severity, see step (4). If there has been no decrease in medical severity, there has been no medical improvement. (See step (5).)
>
> (4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1) through (4) of this section; i.e., whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination. If medical improvement is not related to your ability to do work, see step (5). If medical improvement is related to your ability to do work, see step (6).
>
> (5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (d) and (e) of this section apply. If none of them apply, your disability will be found to continue. If one of the first group of exceptions to medical improvement applies, see step (6). If an exception from the second group of exceptions to medical improvement applies, your disability will be found to have ended. The second group of exceptions to medical improvement may be considered at any point in this process.

4

> (6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe (see § 404.1521). This determination will consider all your current impairments and the impact of the combination of those impairments on your ability to function. If the residual functional capacity assessment in step (4) above shows significant limitation of your ability to do basic work activities, see step (7). When the evidence shows that all your current impairments in combination do not significantly limit your physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature. If so, you will no longer be considered to be disabled.
>
> (7) If your impairment(s) is severe, we will assess your current ability to do substantial gainful activity in accordance with § 404.1560. That is, we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past. If you can do such work, disability will be found to have ended.
>
> (8) If you are not able to do work you have done in the past, we will consider one final step. Given the residual functional capacity assessment and considering your age, education and past work experience, can you do other work? If you can, disability will be found to have ended. If you cannot, disability will be found to continue.

20 C.F.R. § 404.1594(f)(1)-(8). The Commissioner's regulations further provide that for the purposes of determining whether medical improvement has occurred, the Commissioner "will compare the current medical severity of that impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled . . . to the medical severity of that impairment(s) at that time." 20 C.F.R. § 404.1594(b)(7).

IV.   DISCUSSION

    A.   Summary of the ALJ's Findings

At the first step of the eight-step analytical framework, the ALJ concluded that plaintiff was not engaging in substantial gainful activity as of August 24, 2004, the date that claimant's disability presumably had ended. (AT 16.) At step two, he found that plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 16.) At step three, the ALJ determined that plaintiff's had experienced medical improvement as of August 24, 2004, because: (1) by then plaintiff had

5

ceased taking Celebrex, which had been determined to be the cause of plaintiff's autoimmune disorder, and her autoimmune symptoms had improved significantly; and (2) plaintiff's carpal tunnel syndrome had become "stabilized" and plaintiff "was experiencing no more than slight to moderate pain and dysfunction." (AT 17.)

Because the ALJ found medical improvement, he proceeded to step four of the analysis. At step four, he concluded that plaintiff's medical improvement was related to her ability to work because plaintiff's residual functional capacity ("RFC") as of August 24, 2004, was less restrictive than the one she had at the time of the established period of disability. (AT 17, 19.) The ALJ stated that plaintiff had the RFC to perform "light work" as defined in 20 C.F.R. § 404.1567(b),[4] except that plaintiff could not: (1) lift over ten pounds more than occasionally, (2) reach overhead more than occasionally, (3) perform repetitive hand/arm movements for more than ten minutes in an hour, (4) use her upper extremities for grasping or manipulative activities only occasionally during an eight-hour workday. (AT 17.)

Because the ALJ determined that plaintiff's medical improvement related to her ability to work, he proceeded to step six of the analysis. See 20 C.F.R. § 404.1567(f)(4). At step six, the ALJ concluded that plaintiff's current impairments—bilateral carpal tunnel syndrome and an autoimmune disorder—were "severe" within the meaning of the regulations because they caused more than minimal limitation on plaintiff's ability to perform basic work activities. (AT 20.) Accordingly, the ALJ proceeded to step seven, where he determined that plaintiff was

---

[4] "Light work" is defined in 20 C.F.R. § 404.1567(b) as follows:

> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

6

unable to perform past work, i.e., work as a food server.  (AT 20.)

Finally, at the eighth step, the ALJ concluded that as of August 24, 2004, plaintiff was no longer disabled as of August 24, 2004, because she "was capable of making a successful adjustment to work that existed in significant numbers in the national economy."  (AT 21.)  He made this determination in consideration of plaintiff's age, education, work experience, and RFC.  The ALJ relied on the testimony of a vocational expert ("VE"), who testified that an individual with plaintiff's RFC could perform work as: (1) a "surveillance system monitor," a sedentary level job with 50 positions available regionally and 1,000 in California; (2) a "call-out operator," another sedentary level job with 75 positions available regionally and 1,200 in California; and (3) an "election clerk," with 100 positions available regionally and 1,500 in California.  (AT 21.)

      B.     <u>Plaintiff's Substantive Challenges to the ALJ's Decisions</u>

As stated above, plaintiff's impairments include bilateral carpal tunnel syndrome and an autoimmune disorder brought on by plaintiff's ingestion of prescribed medications, including Celebrex.  Plaintiff's briefs in support of her motion for summary judgment state that she has recovered from the effects of her medical reaction, but that her immune system is still compromised and that her carpal tunnel syndrome is disabling by itself.  Plaintiff's challenges to the ALJ's findings at various steps of the analytical framework are addressed below.

          1.     <u>Whether Plaintiff's Carpal Tunnel Syndrome Meets a Listing</u>

Plaintiff asserts that the ALJ committed error at step two of the analysis, which asks whether a claimant's impairment or combination of impairments meets or medically equals the severity of an impairment listed in the regulations.  Plaintiff does not contend that her autoimmune disorder meets or equals a medical listing in the regulations.  However, contrary to the Commissioner's contention, she argues that her carpal tunnel syndrome meets a specific listing in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1"), such that she is disabled within the meaning of the Act.  <u>See</u> 20 C.F.R. § 404.1594(f)(2) (stating that if a claimant has "an

7

impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1," the claimant's disability will be found to continue); <u>see</u> also 20 C.F.R. § 404.1525 (addressing use of the listings).

Plaintiff argues that her carpal tunnel syndrome meets the requirements Section 1.02B of Appendix 1 ("Section 102B") (Pl.'s Mot. for Summ. J. at 5), which addresses musculoskeletal impairments that take the form of "[m]ajor dysfunction of a joint(s)." Plaintiff does not elaborate in any detail as to why her carpal tunnel meets this listing.

Section 102B states:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
> . . .
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

Section 100.B.2.c of Appendix 1 provides:

> What we mean by inability to perform fine and gross movements effectively. Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

In his original decision resolving plaintiff's benefits claim, the ALJ concluded that plaintiff's impairments did not meet or equal the listing in Section 102 because "the record [did] not contain the serious clinical findings, or show extreme manipulative difficulty required by this listings [*sic*]." (AT 30.) In his most recent decision, the ALJ concluded that plaintiff's carpal

8

tunnel syndrome did not meet the severity of any listed impairment. He stated: "As of August 24, 2004, the claimant's impairments did not meet or medically equal a listing. The claimant's musculoskeletal/neurological impairment has not resulted in motor loss, reflex changes, neurological deficits or the degree of functional loss required by the musculoskeletal or neurological listings." (AT 16.)

Although the Commissioner and plaintiff have not addressed this finding in any detail, the undersigned concludes that the ALJ's finding at step two is free of legal error and supported by substantial evidence in the record as a whole. The ALJ noted that plaintiff had performed limited part-time work since August of 2004, including work as a bus driver and a customer service representative. (AT 18.) Additionally, Dr. Langsroth, who is plaintiff's chiropractor and is essentially plaintiff's treating physician in this case, concluded that as of August 23, 2004, plaintiff could lift up to five pounds, and up to ten pounds occasionally, and could perform repetitive hand and arm movements for ten minutes at a time. (AT 649.) These facts substantiate that plaintiff does not suffer from the "extreme functional loss" required by the listing. Moreover, there is an absence of a longitudinal clinical record beyond August of 2004 that would substantiate the level of severity of plaintiff's carpal tunnel syndrome insofar as the medical listing is concerned. See 20 C.F.R. Part 404, Subpart P, App. 1, Section 100H. Accordingly, the ALJ did not err at step two.

      C.      Whether Plaintiff's Autoimmune Disorder and Carpal Tunnel Syndrome Medically Improved

Plaintiff also argues that the ALJ erred at step three of the analysis by finding that she had experienced "medical improvement" as of August 24, 2004. Plaintiff vehemently opposes the ALJ's assessment that her carpal tunnel syndrome improved at all. And although plaintiff argues that her autoimmune symptoms persist to a degree, she concedes that she has recovered from her drug reaction that prompted the autoimmune disorder.

As noted above, "medical improvement" is any decrease in the medical severity of

9

an impairment. 20 C.F.R. § 404.1594(b)(1). A finding of medical improvement "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with" the impairment. Id.

With respect to plaintiff's autoimmune disorder, the ALJ stated: "[B]y August 24, 2004, the claimant had found out that Celebrex, which she had been taking for pain, had triggered her autoimmune disorder. She was taken off of this medication and her autoimmune symptoms improved significantly. The rashes, itching, swelling, shortness of breath, and hair loss all diminished." (AT 17.)

The ALJ's finding is supported by substantial evidence in the record. On April 7, 2004, one of plaintiff's treating physicians, Dr. Tsai, signed a letter acknowledging that plaintiff had developed symptoms of "hair loss, abnormal liver function tests, diffuse skin rashes, generalized Arthralgia, weakness and signs and symptoms of an autoimmune disease attributable to her intake of Celebrex." (AT 236.) The letter states that plaintiff's symptoms "began to weane [sic] during the last year" as a result of "time and discontinuation of the Celebrex." (AT 236.) Other medical records in the administrative record support that plaintiff's autoimmune disorder had been improving throughout the year 2003. (See AT 191-93, 219, 220, 245, 248, 249.) Additionally, plaintiff testified at the most recent hearing before the ALJ that she had recovered "like 100%" from her autoimmune disease. (AT 680.) In her briefs filed with this court, plaintiff represents in a more guarded manner that she has "recovered from the severity of the reaction of Celebrex, but remains to have a compromised immune system." (Pl.'s Reply in Supp. of Mot. for Summ. J. at 2.) Even if some minor symptoms of the autoimmune disorder persist, the record supports that plaintiff has experience a decrease in the severity of her autoimmune disorder.

The ALJ's conclusion that plaintiff's bilateral carpal tunnel syndrome had improved rests on less convincing reasoning. The ALJ reasoned as follows:

[Plaintiff's] carpal tunnel syndrome symptoms also stabilized and the

10

>claimant was experiencing no more than slight to moderate pain and dysfunction.  Her ability to use her upper extremities for manipulative limitations increased to at least occasional use, although repetitive actions were still limited to 10 minutes per hour.  Her condition was considered permanent and stationary by August 24, 2004.  She was released from regular treatment to an "as needed" chiropractic program and conservative medical treatment plan.

(AT 17.)

The Commissioner principally supports the ALJ's finding in reliance on the "permanent and stationary report"[5] prepared by Dr. Langsroth (AT 646-50), plaintiff's chiropractor, arguing that this report indicates that plaintiff's condition had "stabilized or otherwise improved."  (Def.'s Cross-Mot. for Summ. J. at 6.)  Contrary to the Commissioner's characterization, that report makes no representation that plaintiff's condition had "otherwise improved."  Similarly, the Commissioner does not cite to any medical records prior to August 23, 2004, thereby medically establishing that plaintiff's condition actually had improved.  Additionally, plaintiff very well could have "stabilized" in a condition that indicates no level of medical improvement relative to her prior condition.  The Commissioner also relies on the fact that plaintiff sought little treatment after August 24, 2004, except weekly visits to Dr. Langsroth.  However, the Commissioner provides no authority for the proposition that seeking less treatment for a carpal tunnel syndrome justifies a finding of "medical improvement" under the applicable regulation especially where that impairment has been determined to be permanent.  Finally, the Commissioner relies on the Dr. Langsroth's indication in a workers' compensation-related form in March 2005 that plaintiff might be able to return to work as a food server by September 15, 2005.  (AT 651.)  However, the ALJ never relied on this document in support of his decision.

---

[5] "Permanent and stationary" is a term of art relevant to workers' compensation law under California law.  "A disability is considered 'permanent and stationary' for California workers' compensation purposes 'after the employee has reached maximum medical improvement or his or her condition has been stationary for a reasonable period of time.'"  Jenkins v. Astrue, 628 F. Supp. 2d 1140, 1145 n.2 (C.D. Cal. 2009) (quoting Gangwish v. Workers' Compensation Appeals Bd., 89 Cal. App. 4th 1284, 1290 n. 7, 108 Cal. Rptr. 2d 1 (Ct. App. 2001) (quoting Cal. Code Regs., tit. 8, § 10152))).

See Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

The undersigned is concerned that the ALJ's conclusion that plaintiff's carpal tunnel syndrome had medically improved is not based on "changes (improvement) in the symptoms, signs and/or laboratory findings associated with" that impairment. 20 C.F.R. § 404.1594(b)(1). For example, there is no indication that plaintiff's impairment improved as a result of taking some medication or participating in some therapy. There are no objective laboratory findings or imaging suggesting improvement. It might, in fact, be that plaintiff's carpal tunnel condition improved.[6] However, the Commissioner's reasoning in support of the ALJ's decision does not persuade the undersigned that the government has met its burden to show medical improvement. That said, the undersigned will recommend that this case be remanded and that the agency be given an opportunity on remand to address whether plaintiff's carpal tunnel syndrome medically improved and, depending on the resulting conclusion, conduct the appropriate analysis under the eight-part framework.

V. CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment be granted in part.

2. The Commissioner's cross-motion for summary judgment be denied.

3. This matter be remanded for further proceedings consistent with these findings and recommendations, pursuant to sentence four of 42 U.S.C. § 405(g).

4. Judgment be entered for plaintiff.

---

[6] The undersigned notes that when the Appeals Council initially remanded this matter back to the ALJ, its order stated: "As appropriate, [the ALJ] will also obtain one or more consultative examinations regarding the claimant's condition." (AT 44.) It does not appear that the ALJ obtained such a consultative exam, which might have more clearly and appropriately established whether plaintiff's carpal tunnel syndrome had actually decreased in severity.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO RECOMMENDED.

DATED:  August 11, 2010

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE